[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14216

_____

D.C. Docket No. 2:15-cv-14125-JEM

ROGER NICKLAW,
on behalf of himself and all others similarly situated,

Plaintiff-Appellant,

versus

CITIMORTGAGE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

Before MARCUS and WILLIAM PRYOR, Circuit Judges, and LAWSON,[*]
District Judge.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Roger H. Lawson, Jr., United States District Judge for the Middle District of
Georgia, sitting by designation.

This appeal requires us to decide whether a plaintiff has standing to sue when he alleges only a failure to record a satisfaction of mortgage within a statutory period and fails to bring suit until after that statutory violation has been remedied. Roger Nicklaw sold real estate and used the proceeds to satisfy a mortgage owned by CitiMortgage, Inc. New York law required CitiMortgage to file within 30 days a certificate of discharge with the county clerk to record that Nicklaw had satisfied his mortgage. N.Y. Real Prop. Law § 275; N.Y. Real Prop. Acts. Law § 1921. But CitiMortgage failed to record the satisfaction of mortgage until more than 90 days after the date of satisfaction. When Nicklaw discovered that the certificate had been recorded late, he filed a putative class action against CitiMortgage. The complaint alleges that CitiMortgage violated New York law by failing to record the certificate of discharge within the statutory period. The district court dismissed Nicklaw's complaint based on an earlier ruling that a previous suit filed by Nicklaw had become moot, but we need not address that issue. CitiMortgage argues, and we agree, that Nicklaw lacks standing to maintain this action. Because Nicklaw has not alleged that CitiMortgage's violation of New York law caused or could cause him any harm, we dismiss this appeal for lack of jurisdiction.

# I. BACKGROUND

On July 2, 2012, Nicklaw sold real estate that he owned in Buchanan, New York. He used the proceeds to satisfy the balance owed on a mortgage owned by CitiMortgage. Under New York law, CitiMortgage then had 30 days to file a certificate of discharge with the county clerk to record that Nicklaw had satisfied the mortgage. N.Y. Real Prop. Law § 275; N.Y. Real Prop. Acts. Law § 1921. If CitiMortgage failed to record the certificate within 30 days, it would be liable to Nicklaw for $500. N.Y. Real Prop. Law § 275; N.Y. Real Prop. Acts. Law § 1921. This amount would increase to $1,000 after 60 days, and $1,500 after 90 days. N.Y. Real Prop. Law § 275; N.Y. Real Prop. Acts. Law § 1921. But CitiMortgage failed to record the satisfaction of mortgage until October 17, 2012.

In 2013, Nicklaw filed a putative class action against CitiMortgage in the Southern District of Florida that alleged that CitiMortgage violated sections 275 and 1921 by failing to record the certificate of discharge until over 90 days after Nicklaw satisfied his mortgage. CitiMortgage extended an offer of judgment to Nicklaw, Fed. R. Civ. P. 68, that offered him all the relief he requested in the complaint. When Nicklaw refused to accept the offer, CitiMortgage filed a motion to dismiss the complaint on the ground that the offer of judgment rendered the case moot. The district court agreed and dismissed Nicklaw's complaint. Nicklaw did not appeal that dismissal.

3

In October 2014, Nicklaw filed a second complaint against CitiMortgage in the Eastern District of Missouri, which was transferred to the Southern District of Florida. The complaint alleges that CitiMortgage violated sections 275 and 1921 when it filed the certificate of discharge more than 90 days after Nicklaw satisfied his mortgage. It does not allege whether Nicklaw or any other member of the putative class was aware that the certificate of discharge had not been recorded within the statutory time period. It alleges only that the satisfaction of the mortgage was recorded late. CitiMortgage moved to dismiss Nicklaw's second complaint on the ground that the previous dismissal for mootness had preclusive effect.

A magistrate judge recommended the complaint be dismissed based on the earlier ruling on mootness. The district court adopted the report and recommendation of the magistrate judge and dismissed the complaint. After Nicklaw filed this appeal, CitiMortgage moved to dismiss the appeal for lack of jurisdiction.

## II. STANDARD OF REVIEW

We review the dismissal of a complaint *de novo*. *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 993 (11th Cir. 2016).

## III. DISCUSSION

Questions of subject matter jurisdiction may be raised at any time. *Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 861 (11th Cir. 1998). Although we ordinarily will

4

not address issues raised for the first time on appeal, "[a]ny time doubt arises as to the existence of federal jurisdiction, we are obliged to address the issue before proceeding further." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995). This appeal obliges us to consider our jurisdiction.

The Constitution confers limited authority on the judicial branch. It endows the federal courts with "[t]he judicial Power of the United States," U.S. Const. Art. III, § 1, and limits that power to the resolution of "Cases" and "Controversies." *Id.* § 2. "There is no case or controversy, the reasoning has gone, when there are no adverse parties with personal interest in the matter." Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983). And Article III restricts the jurisdiction of the federal courts to litigants who have standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

We must determine whether Nicklaw has standing to sue CitiMortgage. The "irreducible constitutional minimum of standing" comprises three elements: injury in fact, causation, and redressability. *Id.* at 560–61. This bedrock requirement serves many of "the implicit policies embodied in Article III." *Flast v. Cohen*, 392 U.S. 83, 96 (1968). Standing promotes the separation of powers by preventing "overjudicialization of the process of self-governance." Scalia, *The Doctrine of Standing, supra*, at 881. It serves judicial efficiency by "prevent[ing] the judicial

5

process from becoming no more than a vehicle for the vindication of the value interests of concerned bystanders." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687 (1973). It improves judicial decision making by assuring that the questions presented to the court are resolved in a concrete factual context. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). And it ensures that "people cannot be intermeddlers trying to protect others who do not want the protection offered." Erwin Chemerinsky, *Federal Jurisdiction* 59 (5th ed. 2007).

To determine whether Nicklaw has standing, we must decide whether he alleges an injury in fact. Absent an alleged injury, Nicklaw cannot make out a case or controversy under Article III. A plaintiff has injury in fact if he suffered an invasion of a legally protected interest that is concrete, particularized, and actual or imminent. *Lujan*, 504 U.S. at 560. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). And intangible injuries may satisfy the Article III requirement of concreteness. *Id.* at 1549. For example, a plaintiff who alleges a violation of a statutory right to receive information alleges a concrete injury. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982).

Because Nicklaw alleges only that CitiMortgage violated New York law, we must determine whether the intangible harm caused by the delay in recording the

6

certificate of discharge constitutes a concrete injury in fact. "[B]oth history and the judgment of Congress play important roles" in this analysis. *Spokeo*, 136 S. Ct. at 1549. "[W]hether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" is instructive because the case-or-controversy requirement is "grounded in historical practice." *Id.* And "Congress may 'elevat[e] to the status of legally cognizable injuries concrete . . . injuries that were previously inadequate in law.'" *Id.* (first alteration in original) (quoting *Lujan*, 504 U.S. at 578); *see also Warth v. Seldin*, 422 U.S. 490, 514 (1975). But a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 136 S. Ct. at 1549.

Nicklaw argues that the intangible harm that occurs when the discharge of a mortgage is not timely recorded constitutes a concrete injury for two reasons. First, the New York legislature intended to create a substantive right to have the certificate of discharge timely recorded. Second, the right to have a satisfaction of mortgage timely recorded has deep roots in American common law. These arguments fail.

Nicklaw argues that he has suffered a concrete injury because New York law creates a right to have a certificate of discharge recorded in a timely manner, but

7

the relevant question is whether Nicklaw was harmed when this statutory right was violated. "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* As the Supreme Court explained in the context of the Fair Credit Reporting Act, not all statutory violations "cause harm or present any material risk of harm." *Id.* at 1550. For example, the Court found it "difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* But some inaccuracies, such as incorrectly reporting that an individual has a criminal history, might cause harm or a material risk of harm.

Nicklaw alleges neither a harm nor a material risk of harm that the district court could remedy. His complaint does not allege that he lost money because CitiMortgage failed to file the certificate. It does not allege that his credit suffered. It does not even allege that he or anyone else was aware that the certificate of discharge had not been recorded during the relevant time period. And Nicklaw did not file this action until more than two years *after* CitiMortgage recorded the satisfaction of mortgage. Nicklaw fails to allege even a material risk of harm at this late date.

That Nicklaw does not allege a sufficient injury in fact under Article III does not mean that New York law does not create a right that, when violated, could form the basis of a cause of action in a court of New York. But Nicklaw chose to sue CitiMortgage in federal court, and the requirement of concreteness under

8

Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its violation. *Id.* A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court.

Nicklaw also argues that the right to have a certificate of discharge timely filed upon satisfaction of a mortgage has deep roots in remedies available at common law, but his argument misapprehends the nature of those remedies. Nicklaw cites decisions of New York courts from the nineteenth century that involved requests to execute and record satisfaction of mortgages that had been paid in full, *see Griswold v. Onondaga Cty. Sav. Bank*, 93 N.Y. 301 (1883); *People ex rel. Adams v. Sigel*, 46 How. Pr. 151 (N.Y. Sup. Ct. 1873), and the common law action of quiet title could be viewed as a precursor to the New York statutes, *see* Note, *Enhancing the Marketability of Land: The Suit to Quiet Title*, 68 Yale L.J. 1245, 1255–76 (1959). But these causes of action provided a remedy to prevent the risk of harm that occurred while title to property was wrongfully clouded, not a remedy *after* the cloud was lifted.

Nicklaw has failed to allege that he sustained a concrete injury. He does not allege that his credit suffered or that he or anyone else knew that the certificate of discharge had not been recorded within the statutory period. By alleging only that CitiMortgage recorded the certificate late and nothing else, Nicklaw has failed to establish that he suffered or could suffer any harm that could constitute a concrete

9

injury. Because Nicklaw lacks standing to sue CitiMortgage, we need not decide whether the earlier order of dismissal as moot bars relitigation of that issue.

## IV. CONCLUSION

We **DISMISS** this appeal for lack of jurisdiction.